CHICAGO—FIRST DISTRICT—MARCH, 1911. 77

Hutton v. Chicago & Eastern Illinois R. R. Co., 160 Ill. App. 77.

## H. Ernst Hutton, Administrator, Appellee, v. Chicago & Eastern Illinois Railroad Company, Appellant.

### Gen. No. 15,522.

PLEADING—*when declaration shows cause of action for failure to warn.* Held, that the averments of the declaration in this case showed sufficient facts to make out a duty of the defendant to warn the plaintiff of defects alleged to exist in a car and appliances and of a failure to perform that duty, and that after verdict the declaration was good.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. WILLARD M. McEWEN, Judge, presiding. Heard in this court at the March term, 1909. Affirmed. Opinion filed March 16, 1911.

CALHOUN, LYFORD & SHEEHAN, for appellant; E. H. SENEFF, of counsel.

MORSE IVES and H. E. WYNEKOOP, for appellee.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

This is an appeal by the defendant from a judgment for $17,500 recovered by William Witt in his lifetime against the defendant for personal injuries alleged to have been sustained by plaintiff, a switchman, in the service of the defendant, through the negligence of the defendant. In the North Brewer Yards of the defendant near Danville were several tracks running north and south connected with a "lead," one of which was known as "No. 2 repair track." On this track cars in good order and cars out of repair were placed temporarily, and then by switching placed on the proper tracks. Sunday, March 10, 1907, fourteen cars were placed on said track 2, eight or ten feet apart, so that men could walk around each car. The cars were at once inspected by the inspectors of defendant.

78    APPELLATE COURTS OF ILLINOIS.

Hutton v. Chicago & Eastern Illinois R. R. Co., 160 Ill. App. 77.

All the cars were found in good order except car No. 13908, the second car from the north. The cars were equipped with double buffer irons and automatic couplers, with a pin lifting device by which the pin could be raised by the brakeman by means of a lever without going between the cars. The inspectors found in a hole in the coupler at the south end of car 13908 an iron rod with a nut at the upper end which projected twelve or fourteen inches above the coupler and was bent or curved. This rod was no part of the coupling device. They also found that the drawbar was out of order, and by reason thereof would drop down when the tension was removed and raise up when the tension came on it. The inspectors were unable to remove the rod. They placed cards marked "Repair tracks" on the car and wrote on it with chalk the words, "Repair tracks." Monday evening, March 11, after dark and while it was raining, the switching crew to which Witt belonged proceeded to "pull" track 2. Witt followed the engine. He threw the switch leading to No. 2 tracks, got on the footboard of the engine and the engine ran south on to and along No. 2 track, and the cars on that track were coupled together automatically by impact. Witt then gave the engineer a signal to back up, got on the engine, rode to the switch, got off, held up his lantern to see if there was on any car a "shop" or "Repair track" card or mark, and saw none. When the last car had passed he threw the switch and gave a signal to the engineer to come ahead. The engine came ahead and ran the cars south on the "lead." Witt's foreman stood by his side at the switch, and as car No. 11712, the car next south of 13908, was passing over the switch on the "lead," ordered Witt to cut the train between said two cars. The lever which operated the pin lifting device at the south end of car 13908 was on the west side of the car; the like lever on the north end of 11712 was on the east side of the car. The cars could be uncoupled by

lifting the pin on either car. When the pin lifting device failed to lift a pin, the custom was to lift one of the pins by hand, and to do this it was necessary for a switchman to go between the cars. Witt took hold of the lever on car 13908 and gave a signal to the engineer to stop, which was transmitted to the engineer by the foreman. Witt was unable to lift the pin by use of the pin lifting device, and when the cars stopped gave a signal to the engineer for slack, in order to free the pins so that one of them could be raised by hand. This signal was also transmitted to the engineer by the foreman, who from such signal knew that Witt was about to go between the cars to lift a pin by hand, and saw him go between the cars for that purpose. Witt reached over to lift the pin on car 11712, his arm resting on top of the buffer, and as car 13908 came forward and released the tension on the draw bar and pin, the draw bar dropped down and the crooked rod caught Witt's arm and pulled it between the buffing irons which, when they came together, caught and crushed it.

The third count of the amended declaration alleges the facts above stated as to Witt's employment by defendant, alleges that he was working under the orders of a foreman, that a certain car of defendant was defective in the particulars above stated, and that plaintiff did not know and by the exercise of ordinary care would not have known of such defects, but that defendant knew of such defects, yet the defendant, not regarding its duty in that behalf, through its said foreman negligently ordered plaintiff to uncouple two cars, that plaintiff attempted to obey said order, and while doing so, by reason of the premises, the draw bar fell from its usual and proper position and the pin caught his arm and pulled it down, whereby it was caught between the buffing irons and crushed, and that plaintiff was in the exercise of ordinary care for his own safety, etc. We think the count sufficiently avers facts that made it the duty of the defendant to warn plaint-

iff of the defects alleged to exist in the car and appliances, and a failure to perform such duty, and that after verdict, the count must be held to sufficiently aver negligence on the part of defendant in failing to warn plaintiff of such defects. The duty of inspection was on the defendant, and knowledge of the defects in car 13908, disclosed by the inspection, was notice to the defendant of such defects. The foreman ordered Witt to cut the train at the south end of car 13908. He saw that Witt had failed to lift the pin by the use of the lever, took and transmitted his signal for slack, saw him go between the cars, knew that he was about to attempt to lift a pin by hand, and gave him no warning of the defects in car 13908. We think that from the evidence the jury might properly find that the defendant was guilty of the negligence alleged in the third count of the amended declaration; that plaintiff's injury was the direct result of such negligence; that plaintiff did not assume the risk of injury from such negligence and was not guilty of contributory negligence. It follows from what has been said that in our opinion the trial court did not err either in refusing to give the peremptory instruction asked by the defendant, or in denying its motion for a new trial on the ground that the verdict was against the evidence.

We find no such error in procedure as would justify or require the reversal of the judgment.

In view of the nature of plaintiff's injuries and the consequences which the jury might from the evidence properly find resulted therefrom to the plaintiff, we cannot say that the judgment should be reversed, on the ground that the damages are excessive.

The record is, in our opinion, free from reversible error, and the judgment is affirmed.

*Affirmed.*